FILED

Date   10/26/09   Time

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS, FLORIDA

Initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

J. WILLIAM BONEWITZ, individually, )
JOHN N. BRODSON, individually and as a )
beneficiary of an individual retirement )
account, DOUGLAS J. CASSIDY, )
individually and as a beneficiary of an )
individual retirement account, DOUGLAS J. )
CASSIDY TRUST, a revocable trust, )
KATHLEEN S. CASSIDY TRUST, a )
revocable trust, WILLIAM J. CORA, )
individually and as the beneficiary of an )
individual retirement account, DAVID R. )
EDELSTEIN, MD PROFIT SHARING )
FUND, an employee benefit trust, SUSANNA )
R. EDELSTEIN, individually, DAVID R. )
EDELSTEIN, individually, MATTHEW )
EDELSTEIN, individually, JAMES H. )
FERGUSON TRUST, a revocable trust, )
NANCY B. FERGUSON TRUST, a revocable )
trust, RICHARD E. FRAIN, individually, )
TAMBERLY A. FRAIN, individually, )
NANCY H. HART REVOCABLE TRUST, a )
revocable trust, JILL D. HERBERT TRUST, )
a revocable trust, L. HAMILTON KERR III, )
individually, SCOTT C. LUCKING, )
individually, CYNTHIA B. LUCKING, )
individually, WILLARD C. MCNITT, JR., )
individually, MT. KENWINN PARTNERS, )
LP, a limited partnership, KATHERINE L. )
OLSON TRUST, a revocable trust, )
KATHERINE L. OLSON TRUST B, a )
revocable trust, NORTH SHORE )
ASSOCIATES, GYNECOLOGY & )
OBSTETRICS SC PROFIT SHARING )
PLAN, an employee benefit plan, OLIVE G. )
PETERS LIVING TRUST, a revocable trust, )
RICHARD J. PIETRANEK TRUST NO. 1, a )
revocable trust, CINDY FARYL SERLIN, )
individually, MARSHA SERLIN, )
individually, GERALD S. SLOAN, )
individually, GERALD O. STRAUCH, )

2: 09 -c V- 718 -FtM-29DNF

Case No:

Jury Trial Demanded

individually and as the beneficiary of an )
individual retirement account, WILLOW )
SPRINGS CHARITABLE FOUNDATION, a )
charitable trust, EDMUND C. WOODBURY )
REVOCABLE TRUST, a revocable trust, )
and RANDI S. WOODBURY REVOCABLE )
TRUST, a revocable trust, )
)
       Plaintiffs, )
)
v. )
)
FOUNDING PARTNERS CAPITAL )
MANAGEMENT COMPANY, a Florida )
corporation, and WILLIAM L. GUNLICKS, )
individually, )
)
       Defendants, and )
)
FOUNDING PARTNERS STABLE-VALUE )
FUND, LP, a Delaware limited liability )
partnership, and FOUNDING PARTNERS )
STABLE-VALUE FUND II, LP., a Delaware )
limited liability partnership, )
)
       Nominal Defendants. )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, J. WILLIAM BONEWITZ, JOHN N. BRODSON, DOUGLAS J. CASSIDY, DOUGLAS J. CASSIDY TRUST, KATHLEEN S. CASSIDY TRUST, WILLIAM J. CORA, DAVID R. EDELSTEIN, MD PROFIT SHARING FUND, SUSANNA R. EDELSTEIN, DAVID R. EDELSTEIN, MATTHEW EDELSTEIN, JAMES H. FERGUSON TRUST, NANCY B. FERGUSON TRUST, RICHARD E. FRAIN, TAMBERLY A, FRAIN, NANCY H. HART REVOCABLE TRUST, JILL D. HERBERT TRUST, L. HAMILTON KERR, III, SCOTT C. LUCKING, CYNTHIA B. LUCKING, WILLARD C. MCNITT, JR., MT. KENWINN PARTNERS, LP,

2

KATHERINE L. OLSON TRUST, KATHERINE L. OLSON TRUST B, NORTH SHORE ASSOCIATES GYNECOLOGY & OBSTETRICS SC PROFIT SHARING PLAN, OLIVE G. PETERS LIVING TRUST, RICHARD J. PIETRANEK TRUST NO. 1, CINDY FARYL SERLIN, MARHSA SELIN, GERALD S. SLOAN, GERALD O. STRAUCH, WILLOW SPRINGS CHARITABLE FOUNDATION, EDMUND C. WOODBURY REVOCABLE TRUST, and RANDI S. WOODBURY REVOCABLE TRUST, sue Defendants, FOUNDING PARTNERS CAPITAL MANAGEMENT COMPANY ("Founding Partners") and WILLIAM L. GUNLICKS ("Gunlicks"), and Nominal Defendants, FOUNDING PARTNERS STABLE-VALUE FUND, FOUNDING PARTNERS STABLE-FUND II, L.P. , and allege:

## Nature Of Claims

1.      Plaintiffs are a group of investors who, on various dates between approximately March 1, 2003 and October 1, 2008, invested over $31 million in two pooled investment funds that were managed by Founding Partners and Gunlicks. Plaintiffs, who are limited partners in the two funds in which they invested, have learned that Founding Partners and Gunlicks made material misrepresentations and omissions, breached their fiduciary duties and otherwise breached the terms of the applicable agreements regarding the kinds of investments that they would make with Plaintiffs' funds. As a result, Founding Partners and Gunlicks have been unable to return any of Plaintiffs' funds to Plaintiffs upon request.   A recent Securities and Exchange Commission action, and the corresponding receivership and investigation, demonstrates that some, if not a substantial majority, of Plaintiffs' funds may now be lost.

3

2.     Accordingly, Plaintiffs bring this action against Founding Partners and Gunlicks, and Nominal Defendants, FOUNDING PARTNERS STABLE-VALUE FUND, LP, and FOUNDING PARTNERS STABLE-VALUE FUND II, LP ("Nominal Defendants").

## The Parties

3.     Plaintiffs are each of the persons and entities listed below, and invested the approximate original amounts on the approximate dates in the funds identified, all as set forth next to their names:

a.     **J. William Bonewitz,** an Arizona resident who invested funds in at least one of the Nominal Defendants beginning May 1, 2002, which, including reinvestment thereof, totaled $654,830 as of December 31, 2008.

b.     **John N. Brodson,** an Illinois resident who invested funds through a custodial individual retirement account in at least one of the Nominal Defendants beginning June 1, 2007, which, including reinvestment thereof, totaled $599,373.54 as of December 31, 2008.

c.     **Douglas J. Cassidy,** an Illinois resident who invested funds through a custodial individual retirement account in at least one of the Nominal Defendants beginning March 1, 2008, which, including reinvestment thereof, totaled $555,403.25 as of December 31, 2008.

d.     **Douglas J. Cassidy Trust and Kathleen S. Cassidy Trust,** revocable trusts that invested funds in at least one of the Nominal Defendants beginning March 1, 2008, which, including reinvestment thereof, totaled $658,535.50 as of December 31, 2008.

e.     **William J. Cora,** an Illinois resident who invested funds through a custodial individual retirement account in at least one of the Nominal Defendants beginning March 1, 2004, which, including reinvestment thereof, totaled $1,745,369.67 as of December 31, 2008.

f.     **David R. Edelstein, MD Profit Sharing Fund,** an Illinois employee benefit trust that invested funds in at least one of the Nominal Defendants beginning January 1, 2007, which, including reinvestment thereof, totaled $632,909.59 as of December 31, 2008.

g. **Susanna T. Edelstein and David R. Edelstein**, residents of Illinois who invested funds in at least one of the Nominal Defendants beginning November 1, 2007, which, including reinvestment thereof, totaled $568,090.73 as of December 31, 2008.

h. **Matthew Edelstein**, a resident of Illinois who invested funds in at least one of the Nominal Defendants beginning January 1, 2007, which, including reinvestment thereof, totaled $1,082,389.79 as of December 31, 2008.

i. **James H. Ferguson Trust & Nancy B. Ferguson Trust**, revocable trusts that invested funds in at least one of the Nominal Defendants beginning March 1, 2007, which, including reinvestment thereof, totaled $1,025,894.75 as of December 31, 2008.

j. **Richard E. Frain and Tamberly A. Frain**, Illinois residents who invested funds in at least one of the Nominal Defendants beginning March 14, 2005, which, including reinvestment thereof, totaled $2,034,532.23 as of December 31, 2008.

k. **Nancy H. Hart Revocable Trust**, a revocable trust that invested funds in at least one of the Nominal Defendants beginning May 1, 2004, which, including reinvestment thereof, totaled $983,026.71 as of December 31, 2008.

l. **Jill D. Hebert Trust**, a revocable trust that invested funds in at least one of the Nominal Defendants beginning July 1, 2008, which, including reinvestment thereof, totaled $532,410.08 as of December 31, 2008.

m. **L. Hamilton Kerr III**, an Illinois resident who invested funds in at least one of the Nominal Defendants beginning November 1, 2005, which, including reinvestment thereof, totaled $670,986.65 as of December 31, 2008.

n. **Scott C. Lucking and Cynthia B. Lucking**, Florida residents who invested funds in at least one of the Nominal Defendants beginning October 1, 2008, which, including reinvestment thereof, totaled $515,658.72 as of December 31, 2008.

o. **Willard C. McNitt, Jr.**, an Illinois resident who invested funds in at least one of the Nominal Defendants beginning March 1, 2005, which, including reinvestment thereof, totaled $972,106.92 as of December 31, 2008.

p.   **Mt. Kenwinn Partners, LP,** a limited partnership that invested funds in at least one of the Nominal Defendants beginning March 1, 2003, which, including reinvestment thereof, totaled $1,057,053.43 as of December 31, 2008.

q.   **Katherine L. Olson Trust,** a revocable trust that invested funds in at least one of the Nominal Defendants beginning March 12, 2002, which, including reinvestment thereof, totaled $2,703,119.69 as of December 31, 2008.

r.   **Katherine L. Olson Trust B,** a revocable trust that invested funds in at least one of the Nominal Defendants beginning June 1, 2007, which, including reinvestment thereof, totaled $1,198,749.29 as of December 31, 2008.

s.   **North Shore Associates, Gynecology & Obstretrics SC Profit Sharing Plan,** an employee benefit trust that invested funds in at least one of the Nominal Defendants beginning March 1, 2008, which, including reinvestment thereof, totaled $277,698.97 as of December 31, 2008.

t.   **Olive G. Peters Living Trust,** a revocable trust that invested funds in at least one of the Nominal Defendants beginning August 1, 2004, which, including reinvestment thereof, totaled $806,423.26 as of December 31, 2008.

u.   **Richard J. Pietranek Trust No. 1,** a revocable trust that invested funds in at least one of the Nominal Defendants beginning February 1, 2004, which, including reinvestment thereof, totaled $2,987,101.11 as of December 31, 2008.

v.   **Cindy Faryl Serlin,** an Illinois resident who invested funds in at least one of the Nominal Defendants beginning October 1, 2008, which, including reinvestment thereof, totaled $517,530.12 as of December 31, 2008.

w.   **Marsha Serlin,** an Illinois resident who invested funds in at least one of the Nominal Defendants beginning September 1, 2004, which, including reinvestment thereof, totaled $6,066,569.59 as of December 31, 2008.

x.   **Gerald S. Sloan,** an Illinois resident who invested funds in at least one of the Nominal Defendants beginning February 1, 2004, which, including reinvestment thereof, totaled $1,332,087.79 as of December 31, 2008.

y.    **Gerald O. Strauch,** an Illinois resident who invested funds through a custodial individual retirement account in at least one of the Nominal Defendants beginning May 1, 2004, which, including reinvestment thereof, totaled $520,536.74 as of December 31, 2008.

z.    **Willow Springs Charitable Foundation,** a charitable trust that invested funds in at least one of the Nominal Defendants beginning March 1, 2004, which, including reinvestment thereof, totaled $1,450,062.89 as of December 31, 2008.

aa.   **Edmund C. Woodbury Revocable Trust and Randi S. Woodbury Revocable Trust,** revocable trusts that invested funds in at least one of the Nominal Defendants beginning January 1, 2004, which, including reinvestment thereof, totaled $1,495,494.95 as of December 31, 2008.

4.     Most of the Plaintiffs directed that any returns be reinvested.

5.     Upon information and belief, Gunlicks is a resident of Collier County, Florida, and was and is the president, chief executive officer and sole shareholder of Founding Partners.

6.     Founding Partners is a Florida corporation with its principal place of business in Collier County, Florida.  Founding Partners is registered with the Securities and Exchange Commission as an investment advisor.

7.     Nominal Defendant, FOUNDING PARTNERS STABLE-VALUE FUND, LP (f/k/a Founding Partners Multi-Strategy Fund, LP) ("Stable Value I"), is a Delaware limited liability partnership with its principal place of business in Collier County, Florida. Founding Partners is its general partner.

8.     Nominal Defendant, FOUNDING PARTNERS STABLE-VALUE FUND II, LP ("Stable Value II"), is a Delaware limited liability partnership with its principal place of business in Collier County, Florida.  Founding Partners is its general partner.

## Jurisdiction and Venue

9.   This Court has personal jurisdiction over each of the Defendants because, individually or collectively, each of them generally does business in this state, made or performed a contract or promise substantially connected with this state, transacted business in this state, committed a tortious act within this state, and also because the Florida and federal constitutions otherwise permit the assertion of personal jurisdiction over these Defendants.

10.   This Court has original federal question subject matter jurisdiction over Plaintiffs' federal securities claims set forth below under 28 U.S.C. § 1331, and has supplemental subject matter jurisdiction over the various common-law claims pursuant to 28 U.S.C. § 1367 as these additional claims are so related to the federal claims that they form part of the same case or controversy.

11.   Venue is proper in this Court pursuant to, among other rules, Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and also 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims set forth herein occurred here, because the securities transactions occurred here, and also because one or more of the Defendants are subject to personal jurisdiction here.

**Background Allegations**

12.     Since at least March 2003, Founding Partners and Gunlicks, or one or more of their predecessors, have offered or caused to be offered to certain accredited investors investments in one or more of the Nominal Defendants.

13.     The investment materials offered to each prospective investor include a Confidential Offering Memorandum ("Confidential Memorandum"), an investor application/questionnaire, and a copy of the limited partnership agreement for the respective fund. These materials set forth the terms of the investment, provide material representations regarding the nature of the investments to be made, and tout Founding Partners and Gunlicks as experienced and trustworthy professionals. In addition, on a monthly basis Defendants have sent written statements of accounts that were the basis for Plaintiffs' additional reinvestments of the proceeds from the investments, as reported.

**Stable Value I**

14.     Stable Value I is a private investment limited partnership. According to its March 1, 1996 Limited Partnership Agreement, any investor funds invested would be available for withdrawal (redemption) at the end of any calendar quarter on 60 days notice. Founding Partners is and was the general partner, and was responsible for the management of the partnership's investments. Gunlicks is and was the president and chief executive officer of Founding Partners, and also is and was its sole shareholder.

15.     In a June 2000 Supplement to the April 1996 Confidential Memorandum, Founding Partners and Gunlicks disclosed that Stable Value I had entered into a Credit and Security Agreement with Sun Capital Healthcare, Inc. pursuant to which Stable

Value I would make loans to Sun Capital Healthcare, Inc.  Sun Capital Healthcare, Inc. purportedly would use the loan proceeds to purchase certain defined healthcare receivables.

16.     The June 2000 Supplement disclosed that the initial Credit and Security Agreement provided that purchased receivables were to satisfy certain eligibility criteria, including being outstanding for fewer than 120 days.  Founding Partners and Gunlicks described the healthcare receivables as "the payment obligations of Federal and State government agencies, and certain U.S. insurance companies rated by various rating firms" and were "investment grade."  Two years later, Founding Partners and Gunlicks issued a May 2002 Supplement to the April 1996 Confidential Memorandum disclosing that Stable Value I's funds "are currently limited to primarily making loans secured by healthcare receivables and selling participations in such loans to an affiliated fund."

17.     These materials were provided to each investor.  Founding Partners and Gunlicks also represented to investors, including Plaintiffs, that all, or the majority, of the healthcare receivables being purchased were "government backed" and low risk.

18.     In fact, Stable Value I's investments primarily have been in loans made to Sun Capital Healthcare, Inc., Sun Capital, Inc. and Promise Healthcare -- purported investments that are described more fully below.

19.     Founding Partners and Gunlicks earned generous fees relating to the fund, including at least (a) an annual management fee of 1.25% to 2.5% based on the amounts in each limited partner's capital account; and (b) all expenses, including legal fees.

## Stable Value II

20.     Stable Value II was, on information and belief, a fund that Founding Partners and Gunlicks formed in order to attract additional investors for Stable Value I, but which could not directly invest in Stable Value I due to legal restrictions on, among other things, the number of permitted investors.   Accordingly, Founding Partners and Gunlicks created Stable Value II in or about January 2007, and caused the distribution of the Stable Value II January 2007 (a) Limited Partnership Agreement and (b) Confidential Memorandum, to prospective investors.   As of December 2008, all or substantially all of the Stable Value II investment funds were invested in Stable Value I.

## Sun Capital

21.     The entities that are collectively referred to hereafter as "Sun Capital" include:

a.     Sun Capital, Inc., a Florida corporation that buys accounts receivables from commercial businesses.   Businesses sometimes refer to the loaning of money, secured by accounts receivable, as "factoring."

b.     Sun Capital Healthcare, Inc., a Florida corporation that, among other activities, buys accounts receivable and third-party medical receivables, buys disproportionate share ("DSH") receivables, buys workers compensation claims, provided working capital for use in the acquisition of hospitals, and provided construction financing to Promise Healthcare.

c.     Promise Healthcare, a Florida corporation that operates and manages 15 long-term acute care hospitals for its affiliate, Promise Hospital of East Los Angeles Limited Partnership.

22.     These Sun Capital entities are each owned by the same three principles. Since at least 2001, Founding Partners has caused (a) Stable Value I to invest substantially all of its portfolio in Sun Capital, and (b) Stable Value II to invest all or substantially all of its funds in Stable Value I.

23.     These "investments" now total in excess of $550 million pursuant to two Credit and Security Agreements and other, unwritten and otherwise undisclosed purported agreements among Defendants and Sun Capital. This figure constitutes, on information and belief, substantially all, if not all, of the funds invested in Stable Value I and Stable Value II.

24.     Unknown to Plaintiffs, and undisclosed in any of the investor disclosure documents, beginning in or around 2004, Founding Partners and Gunlicks loaned Stable Value funds to Sun Capital to purchase receivables that were longer-term, less liquid and more risky than those disclosed in written supplemental offering materials, monthly performance reports, in-person meetings and other documentation, including receivables from troubled hospitals that needed to remain open if Sun Capital ever was to repay the loan amounts.

25.     These risky receivables included "Disproportionate Share" receivables (called "DSH" receivables) that are a particular type of Medicare and Medicaid receivable the federal government pays in two parts to healthcare providers in poor or

12

underserved areas.   The government makes the first payment at the normal reimbursement rate and in the normal collection period.  The second payment is in excess of the normal rate, but is paid on average two years after the serve date and is paid only if the provider is still operating.  Thus, not only are DSH receivables more risky, they also add a "going concern" risk that ties collectibility to the provider's ability to remain open. Founding Partners and Gunlicks also loaned Stable Value funds to Sun Capital, which, contrary to the terms of the Credit and Security Agreements, used Stable Value funds to make loans directly to the Sun Capital-affiliated hospitals.  None of this was disclosed to Plaintiffs.

26.   On information and belief, less than one-half of the $550 million "loaned" to Sun Capital was "invested in" the less risk medical receivables disclosed to Plaintiffs as the basis for their investments.

27.   Also unknown to Plaintiffs, Founding Partners and Gunlicks permitted Sun Capital to use loan proceeds to purchase workers compensation receivables, which often have a maturity of up to three years.  These also are more risky because they are based on unadjudicated claims.

28.   Founding Partners and Gunlicks also permitted Sun Capital to breach the terms of the Credit and Security Agreements in numerous other respects, including by permitting loans in excess of the available collateral (such as the factored accounts receivables) and in failing to prevent and correct Sun Capital's use of loan proceeds to make investments in its own developments and other investments.  This included Sun Capital's outright purchase of distressed hospitals.

29.     While this conduct was occurring, Founding Partners and Gunlicks did not require Sun Capital to provide audited financial statements (as required in the Credit and Security Agreements) to track the significant loans it had made, nor did Founding Partners and Gunlicks cause the Nominal Defendants to provide audited financials, or other reliable information to the investors concerning their investments as is required in the Nominal Defendants' respective agreements.  Founding Partners and Gunlicks did not disclose any of these deviations to Plaintiffs.

30.     While investors were continuously reinvesting their fund earnings and making additional capital contributions, Founding Partners and Gunlicks regularly misled investors as to the fund composition and risk with false financial reports and other misleading statements and omissions.   Furthermore, throughout this time, Founding Partners and Gunlicks continued to solicit new investments in the Nominal Defendants, including from Plaintiffs, without making corrective disclosures to remedy the material misrepresentations and omissions made and undisclosed in the offering materials.

### Prior SEC Cease and Desist Order

31.     In December of 2007, Founding Partners and Gunlicks agreed with the SEC to the entry of a Cease and Desist Order, dated December 3, 2007.  This order provided, among other things, that from June 2001 through May 2002, certain related party transactions among Gunlicks, Founding Partners and a related entity were inconsistent with the terms of the Stable Value I offering memorandum.

32.     In particular, the SEC found that Founding Partners and Gunlicks had caused Stable Value I and a related fund to make $233,000 in loans with entities under

common control. Stable Value I also paid approximately $169,000 in "royalty fees" to a related and under common control entity called Stewards & Partners Limited, a Gunlicks-formed entity based in Bermuda.

33.     The SEC also faulted Founding Partners and Gunlicks for causing Stable Value I to loan, at the time, nearly $12 million to Sun Capital for the purchase of commercial receivables, which the SEC described as "a material deviation from [Stable Value I's] offering memorandum because there are differences between healthcare and commercial receivables."

34.     As a result of the above, and as more fully described in the Cease and Desist Order, the SEC found that Gunlicks had caused Founding Partners to violate the Securities Act of 1933. Founding Partners and Gunlicks agreed to a number of penalties and other remedial measures, including disgorgement of certain sums and the payment of a fine to the United States Treasury. Founding Partners and Gunlicks never disclosed the Cease and Desist Order to Plaintiffs.

<u>**Contemporary SEC Lawsuit**</u>

35.     On April 20, 2009, the SEC commenced litigation in the United States District Court for the Middle District of Florida against Founding Partners and Gunlicks, along with Sun Capital, Inc., Sun Capital Healthcare, Inc., Stable Value I, Stable Value II, and related funds for alleged violations of the Securities Act of 1933, Section 10(b) and Rule 10b-5 of the Exchange Act of 1934, the Investment Advisors Act, and the Cease and Desist Order.

36.     Pursuant thereto, the SEC has obtained the appointment of a receiver to take over Defendants and pursue their assets.

37.     The SEC has disclosed in connection with this litigation that its investigation has revealed that of the $550 million in loans to Sun Capital:

(a)     $12 million is invested in commercial (non-hospital related) receivables;

(b)     $383 million is invested in healthcare receivables, which includes $53 million in workers' compensation receivables, $70 million invested in receivables of three non-Promise hospitals and the remainder of which is invested in the receivables of 19 related-party Promise hospitals;

(c)     $48 million is invested in real estate on which the Promise hospitals are located; and

(d)     $120 million is invested directly in the Promise hospitals.

38.     This Cout recently found that the SEC had established a likelihood of success on the merits of its fraud and other securities claims in connection with a motion to freeze Gunlicks' assets (which the Court has granted), and the SEC litigation continues.

**Material Misrepresentations And Omissions**

39.     As described above, Founding Partners and Gunlicks affirmatively misrepresented to Plaintiffs that the Nominal Defendants represented safe, secure low-risk investments..

40.     Later, when Founding Partners and Gunlicks made certain incomplete and otherwise erroneous disclosures regarding the loans to Sun Capital, Founding Partners

and Gunlicks continued to affirmatively misrepresent to Plaintiffs that these loans were secured and that any purchased receivables would be due in less than 120 days and would be of a certain investment quality and security.

41.     At no time prior to any of Plaintiffs' investments did Founding Partners or Gunlicks disclose that they had permitted Sun Capital to invest in workers compensation or DSH receivables, or that these receivables were more risky than disclosed.

42.     Founding Partners and Gunlicks further failed to disclose that the terms of the Sun Capital and Security Agreements were not being followed, that they were not demanding compliance therewith and in fact were excusing material breaches of the same, that Sun Capital was out of compliance with the obligations set forth therein, and that Sun Capital had used Stable-Value funds including for operating capital and to purchase hospitals.

43.     Founding Partners and Gunlicks also misrepresented that investors would receive audited financials, and failed to disclose that they were not requiring audited financials from Sun Capital.

44.     In furtherance of their fraud, Founding Partners and Gunlicks misled Plaintiffs with monthly performance reports showing stable monthly returns based on loans to the Sun Capital entities that the health care receivables purportedly secured. Gunlicks and Founding Partners did not disclose that since no later than January 2008, the total amount of receivables (traditional 120-day receivables, workers-compensation receivables, and DSH receivables) had been less than the balance of the loans to Sun Capital.

45.     Similarly, contrary to the terms of the operative limited partner documents, Gunlicks and Founding Partners misused investment funds to pay personal and other purportedly excluded expenses.

46.     Founding Partners and Gunlicks also never disclosed to Plaintiffs the "bulk" purchase of receivables.  Rather, Founding Partners and Gunlicks had falsely represented that they had always contemporaneously approved particular receivable purchases.

47.     In light of the material misrepresentations and omissions regarding Sun Capital, it is clear that Founding Partners and Gunlicks fraudulently misrepresented the nature of investments in the Nominal Defendants, as well as the financial condition of the Nominal Defendants, to Plaintiffs and other current and prospective investors,

48.     Founding Partners and Gunlicks performed such acts knowingly, recklessly, without disclosure, and in violation of Founding Partners' and Gunlick's fiduciary and other contractual duties to Plaintiffs.

49.     There may be additional misrepresentations and omissions that will come evident only after further investigation.

50.     Each of these misrepresentations and omissions were material, and many were continuing in nature.

## COUNT I

**Federal Securities Fraud
Section 10(b) and SEC Rule 10b-5
15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5
Against Founding Partners and Gunlicks**

51.    Plaintiffs reallege and incorporate by reference herein Paragraphs 1- 50 as if fully set forth herein.

52.    During the times set forth herein, Founding Partners and Gunlicks, directly or indirectly, engaged in a common plan, scheme and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business that operated as a fraud and deceit upon Plaintiffs, and made various deceptive and untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiffs.  The purpose and effect of said scheme, plan and unlawful course of conduct was to induce Plaintiffs to make investments in the Nominal Defendants.

53.    Founding Partners and Gunlicks, pursuant to said scheme, plan and unlawful course of conduct, knowingly or recklessly issued, caused to be issued and/or participated in the preparation and issuance of deceptive and materially false and misleading statements to Plaintiffs that were contained in or omitted from various documents and other statements Founding Partners and Gunlicks issued, as set forth in more detail above.

54.   Founding Partners and Gunlicks knew and intended to deceive Plaintiffs, or in the alternative acted with reckless disregard for the truth, when they failed to disclose or cause the disclosure of the true facts to Plaintiffs regarding their investments.

55.   As a result of the dissemination of the false and misleading statements and material omissions set forth above, Plaintiffs actually and reasonably relied to their detriment on those statements and omissions and made the investments detailed above in the Nominal Defendants.   But for the material misrepresentations and omissions of Founding Partners and Gunlicks, and had Plaintiffs known the truth, they would not have made their investments or would have requested redemption of their investments sooner.

56.   As a result of Founding Partners and Gunlicks actions, Plaintiffs have suffered damages.   The wrongs described herein have actually and proximately caused Plaintiffs damages.

57.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to the misrepresentations and omissions set forth in this Complaint.   The statements alleged to be false and misleading all relate to then-existing facts and conditions known to Defendants.   To the extent that there were any forward-looking statements, there were no meaningful cautionary statements identifying important cautionary factors that could cause actual results to differ materially from those in any forward-looking statements.

58.   By reason of the foregoing, Founding Partners and Gunlicks, directly or indirectly, violated the Exchange Act and Rule 10b-5 in that they:

a.   Employed devices, schemes and artifices to defraud;

20

b.      Made untrue statements of material facts or omitted to state material facts necessary in order to make other statements made, in light of the circumstances under which they were made, not misleading; and/or

c.      Engaged in acts, transactions, practices and courses of business that operated as a fraud and deceit and a scheme to defraud upon Plaintiffs in connection with their investments.

WHEREFORE, Plaintiffs demand judgment against Founding Partners and Gunlicks, jointly and severally, as follows:

a.      disgorgement of all fees, expenses and other charges that Defendants levied on the Nominal Defendants and/or against Plaintiffs' accounts including management fees, royalty payments, and any similar fee whether or not called a royalty or management fee;

b.      a return to Plaintiffs of the monies they invested in the Nominal Defendants;

c.      Plaintiffs' actual damages;

d.      punitive and/or exemplary damages as permitted by law;

e.      pre-judgment and post-judgment interest;

f.      attorneys' fees and court costs;

g.      injunctive relief enjoining Defendants from further dissipating Plaintiffs' investment funds; and

h.      such further legal and equitable relief as this Court deems just and proper.

## COUNT II

**Common Law Fraud**
**Against Founding Partners and Gunlicks**

59.  Plaintiffs reallege and incorporate by reference Paragraphs 1-50 as if fully set forth herein.

60.  As set forth above, Founding Partners and Gunlicks made material misrepresentations of fact, or omitted to disclose material facts necessary to make stated facts not misleading to Plaintiffs.

61.  The misrepresentations and omissions of Founding Partners and Gunlicks regarding Plaintiffs' investments were false and fraudulent and were known to be false and fraudulent at the time they were made.

62.  The misrepresentations and omissions were false and fraudulent for the specific reasons set forth above.

63.  The misrepresentations and omissions by Founding Partners and Gunlicks were to induce Plaintiffs to make their investments, and with the intent that Plaintiffs accept and rely upon the misrepresentations and omissions in making their investments.

64.  In reasonable reliance upon the misrepresentations and omissions, Plaintiffs entered into their investments in the Nominal Defendants.

65.  Plaintiffs' reliance on the misrepresentations and omissions of Founding Partners and Gunlicks were justifiable under the circumstances.

66.  Prior to making their investments in the Nominal Defendants, Plaintiffs were not aware of the false and misleading nature of the misrepresentations and omissions of Founding Partners and Gunlicks, and reasonably believed them to be true.

67.     The misrepresentations and omissions by Founding Partners and Gunlicks were material in that Plaintiffs would not have invested in the Nominal Defendants and/or would have requested redemption of their investments sooner if they had known the representations and omissions were false.

68.     Founding Partners and Gunlicks made the material misrepresentations and omissions in the course of their business, profession or employment in which they had a pecuniary interest.

69.     As a direct result of the wrongful conduct of Founding Partners and Gunlicks, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs demand judgment against  Founding Partners and Gunlicks, jointly and severally, for damages, pre-judgment, and post-judgment interest, attorneys' fees to the extent provided by law, all costs of this action, and for such other relief as this Court deems just and proper.

## COUNT III

### Negligent Misrepresentation
### Against Founding Partners and Gunlicks

70.     Plaintiffs reallege and incorporate by reference Paragraphs 1- 50 as if fully set forth herein.

71.     As set forth above, Founding Partners and Gunlicks made numerous material misrepresentations and omissions of material facts relating to Plaintiffs' investments.

72.     At the time Founding Partners and Gunlicks made the misrepresentations and omissions, they knew or should have known that the misrepresentations and

omissions were false or fraudulent, or made such representations and omissions with reckless disregard for the truth or falsity of the statements.

73.     The misrepresentations and omissions were false for the specific reasons set forth above.

74.     The misrepresentations and omissions were made in the context of providing information to Plaintiffs in connection with making investments, and in reviewing and considering the state of these investments, and Plaintiffs reasonably relied upon those misrepresentations and omissions and relied on Founding Partners and Gunlicks to truthfully disclose information regarding their investments.

75.     Founding Partners and Gunlicks failed to exercise reasonable care or competence in obtaining or communicating the information.

76.     The misrepresentations and omissions by Founding Partners and Gunlicks were to induce Plaintiffs to make their investments, and with the intent that Plaintiffs accept and rely upon the misrepresentations and omissions in making their investments.

77.     In reasonable reliance upon the misrepresentations and omissions, Plaintiffs entered into their investments in the Nominal Defendants.

78.     Plaintiffs' reliance on the misrepresentations and omissions of Founding Partners and Gunlicks were justifiable under the circumstances.

79.     Prior to making their investments in the Nominal Defendants, Plaintiffs were not aware of the false and misleading nature of the misrepresentations and omissions of Founding Partners and Gunlicks, and reasonably believed them to be true.

80.    The misrepresentations and omissions by Founding Partners and Gunlicks were material in that Plaintiffs would not have invested in the Nominal Defendants and/or would have requested redemption of their investments sooner if they had known the representations and omissions were false.

81.    Founding    Partners    and    Gunlicks    each    made    the    material misrepresentations and omissions in the course of their respective business, profession and/or employment, in which they had a pecuniary interest.

82.    As a direct result of the wrongful conduct of Founding Partners and Gunlicks, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs demand judgment against  Founding Partners and Gunlicks, jointly and severally, for damages, pre-judgment, and post-judgment interest, attorneys' fees to the extent provided by law, all costs of this action, and for such other relief as this Court deems just and proper.

## COUNT IV

### Breach of Contract
### Against Founding Partners and Gunlicks

83.    Plaintiffs reallege and incorporate by reference herein Paragraphs 1- 50 as if fully set forth herein.

84.    Plaintiffs entered into valid partnership agreements with Defendants, pursuant to which Defendants agreed to manage their investments pursuant to the terms set forth in the Nominal Defendants Limited Partnership Agreements and also as set forth in the offering memoranda and later representations.

85. Through their material misrepresentations and omissions and other misconduct as set forth above, Founding Partners and Gunlicks have materially breached their contractual obligations to Plaintiffs.

86. As a direct and proximate result of these breaches, Plaintiffs have suffered damages.

87. Plaintiffs have performed all of their obligations under the limited partnership agreements.

88. All conditions precedent to the assertion of this claim have been performed, waived, or excused.

WHEREFORE, Plaintiffs demand judgment against Founding Partners and Gunlicks for damages, pre-judgment and post-judgment interest, attorneys' fees, all costs of this action, and for such other relief as this Court deems just and proper.

## COUNT V

### Breach of Fiduciary Duty
### Against Founding Partners and Gunlicks

89. Plaintiffs reallege and incorporate by reference herein Paragraphs 1- 50 as if fully set forth herein.

90. Founding Partners and Gunlicks were fiduciaries to Plaintiffs and accordingly owed them duties of good faith and fair dealing, loyalty, care and candor. Fund managers in particular owe duties to investors to carry out funds investment strategies as disclosed, to properly value assets in funds portfolio, and to report truthfully to the investors.

91.   Founding Partners and Gunlicks violated each of these duties through the misrepresentations, omissions and misconduct identified herein, and benefitted themselves at Plaintiffs' expense and detriment.

92.   As a direct and proximate result of these breaches of fidcuciary duty, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs demand judgment against Founding Partners and Gunlicks, jointly and severally, for damages, pre-judgment interest, post-judgment interest, attorneys' fees to the extent provided by law, all costs of this action, and for such other relief as this Court deems just and proper.

## COUNT VII

### Violation of The Florida Securities
### And Investor Protection Act
### Against Founding Partners And Gunlicks

93.   Plaintiffs reallege and incorporate by reference herein Paragraphs 1- 50 as if fully set forth herein.

94.   At all relevant times, the Florida Securities and Investor Protection Act was in full force and effect.  Section 517.301 of the Act provides in part that:

> It is unlawful and a violation of the provisions of this chapter for a person:
>
> (a)   In connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security . . . , directly or indirectly:
>
> 1.   To employ any device, scheme, or artifice to defraud;
>
> 2.   To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to

make the statements made, in the light of the circumstances under which they were made, not misleading; or

3.      To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

95.      Section 517.211 of the Act provides for remedies as follows:

(2) Any person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner or agent or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission, if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

96.      Based upon the allegations set forth herein and other provisions of the Act, Defendants have violated the Florida Securities and Investor Protection Act and Plaintiffs are entitled to appropriate remedies.

WHEREFORE, Plaintiffs demand judgment against Founding Partners and Gunlicks, jointly and severally, for damages (to the extent Plaintiffs' shares have been disposed of), pre-judgment interest, post-judgment interest, attorneys' fees, all costs of this action, and for such other relief as this Court deems just and proper.

## COUNT VIII

### Violation of The Illinois Securities Act
### Against Founding Partners and Gunlicks

97.      Plaintiffs reallege and incorporate by reference herein Paragraphs 1-50 as if fully set forth herein.

98.      At all relevant times there was in full force and effect in the State of Illinois The Illinois Securities Law of 1953. In relevant part, that statutory scheme provides that:

5/12   Violation

It shall be a violation of the provisions of this Act for any person:

\* \* \*

F.     To engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof.

G.     To obtain money or property through the sale of securities by means of any untrue statement of a material fact or nay omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

\*\*\*\*

I.     To employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly.

99.   The 1953 Act provides for private civil remedies as follows:

Every sale of security made in violation of the provisions of this Act shall be avoidable at the election of the purchaser exercised as provided in subsection B of this Section; and the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer or salesperson who shall have participated or aided in any way in making the sale, and in case the issuer is a corporation or unincorporated association or organization, each of its officers, and directors (or persons performing similar functions) who shall have participated or aided in making the sale, shall be jointly and severally liable to the purchaser as follows:

(1) for the full amount paid; together with interest from the date of payment for the securities sold at the rate of interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum) less any income or other amounts received by the purchaser on the securities. . . .

If the purchaser shall prevail in any action brought to enforce any of the remedies provided in this subsection, the court shall assess costs together with the reasonable fees and expenses of the purchaser's attorney against the defendant...."

100.   Plaintiffs gave notice of their election to rescind on or about August 6, 2009 pursuant to the Act.

101.   Defendants have not made an offer to repurchase pursuant to section 815 ILCS 5/13(C).

102.   Based upon the allegations set forth herein, Defendants have violated the Illinois Securities Act of 1953 and Plaintiffs are entitled to relief.

WHEREFORE, Plaintiffs demand judgment against Founding Partners and Gunlicks, jointly and severally, for rescission of their investment purchases, pre-judgment interest, post-judgment interest, attorneys' fees, all costs of this action, and for such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August _____, 2009

　　　　　　COHEN & GRIGSBY, P.C.
　　　　　　Attorneys for Plaintiffs


　　　　　　_____
　　　　　　KELLEY GERAGHTY PRICE (Lead Counsel)
　　　　　　Florida Bar No. 889539
　　　　　　27200 Riverview Center, Suite 309
　　　　　　Bonita Springs, Florida 34134
　　　　　　(239) 390-1913 – Telephone
　　　　　　(239) 390-1901 – Facsimile
　　　　　　E-mail: kprice@cohenlaw.com
　　　　　　Trial Counsel